[No. 21819. Department One. June 14, 1929.]

RUDOLPH MORSBACH *et al., Respondents,* v. THURSTON COUNTY, *Appellant.*[1]

*The Attorney General, L. B. Donley, Assistant, W. J. Milroy* and *Leonard E. Top,* for appellant.

*P. C. Kibbe,* for respondent.

HOLCOMB, J.—In this action, respondents allege that they are the owners of certain lands in Thurston county, and that traversing a part of the land is an old abandoned grade where the Northern Pacific railway formerly was located; that appellant, by its agents and employees, has entered upon the lands in question and has started work constructing a county road upon the old abandoned grade of the railway. It is alleged that the rights of the railway company to the land in question were only as set forth in a certain

[1]Reported in 278 Pac. 686.

deed, and that the effect of that deed is such that the title to the land is in respondents. Damages are asked and a decree of the court restraining further trespass.

The deed to the Northern Pacific Railroad Company is set out in the complaint. Appellant demurred to the complaint, which demurrer was overruled, and appellant then answered setting up the same deed as that alleged and relied upon by respondents, and alleging more in detail that, from the date of the deed until about 1910, the Northern Pacific Railroad Company and its successor used and maintained a right of way as set forth in the deed; ran its trains over that right of way; and that, about 1910, the railway company bought a certain other right of way near the site of the right of way conveyed in the above deed and proceeded to build a new line of tracks, fences and telegraph lines on the new right of way; that in 1913, the Northern Pacific Railway Company, having moved its tracks and equipment to its new location, by quitclaim deed conveyed the old right of way to the state of Washington, which deed was duly recorded, and thereafter the state of Washington granted an easement to Thurston county for the purpose of building a county road over the property, which easement was duly recorded.

The cause was tried to a jury after the court had ruled that the demurrer to the complaint should be overruled and holding, as a matter of law, that the title to the land in suit was in respondents. Judgment was thereafter entered in favor of respondents, adjudging them to be the owners of the railroad grade in suit, restraining a certain private road thereon, and adjudging that respondents recover from appellant damages in the sum of $250 as awarded by the jury.

The assignments of error are that the court erred in overruling the demurrer; in holding that respond-

ents are the owners of the property described in the pleadings; and in entering judgment in favor of respondents and against appellant.

 Respondents opened their brief with motions to strike the statement of facts because it contains one hundred seventy-three pages and no abstract was made, served and filed, as required by Rem. Comp. Stat., § 1730-1, and the rules of this court.

No abstract was made, served and filed, as so required, and the statement of facts is therefore stricken, and will be disregarded. It does not follow, however, that the appeal should be dismissed. On the contrary, the striking of the statement of facts is not jurisdictional as to the appeal, and the appeal cannot be dismissed.

All errors claimed by appellant are grounded upon the record proper. The motion to dismiss is therefore denied.

 The deed in suit reads:

"Know all men by these presents, that Edward Kratz of Thurston county, Washington territory, in consideration of two hundred dollars ($200) paid by the Northern Pacific Railroad Company and other good and valuable considerations, the receipt whereof is hereby acknowledged, do by these presents give, grant, bargain, sell and convey unto said Northern Pacific Company, or its assigns the following described premises, viz: the right-of-way for the construction of said company's railroad in and over the south half of the northeast quarter of section twenty-two and the west half of the northwest quarter of section twenty-three of township fifteen north of range two west, situate in Thurston county, Washington territory, and the construction of certain canals, whereby the channel of Skookumchuck is changed and prevented from infringing upon said railroad including the land necessary for said roads and canals, hereby acknowledging satisfaction in full for all damages therefrom.

"To have and to hold the general premises with the privileges and appurtenances thereto belonging to the Northern Pacific Railroad Company its successors and assigns to their use and behoof forever. And the said Edward Kratz for himself and his heirs, executors and administrators does covenant with said Northern Pacific Railroad Company its successors and assigns that he is lawfully seized of the aforesaid premises, and that they are free from all incumbrances, that he has good right to sell and convey same to said Northern Pacific Railroad Company as aforesaid and that he will and his heirs, executors, and administrators will warrant and defend the same to the Northern Pacific Railroad Company its successors and assigns forever against the lawful claims and demands of all persons.

"In witness whereof I have hereunto set my hand and seal this 12th day of November in the year of our Lord Eighteen Hundred and Seventy-two.

"EDWARD KRATZ (Seal)"

All the contentions and the entire argument of appellant are based upon the proposition that the deed in question conveys the fee, and not an easement.

One is struck at once by the very incomplete and insufficient description contained in the deed as to the property conveyed. In fact, appellant suggests at one point in its brief that the effect of the deed, were it not for the words "right-of-way for the construction of said company's railroad," would be to transfer in fee simple all of the legal subdivisions mentioned in the deed; in other words, two eighty-acre tracts of land, in place of a mere right of way for a railroad. Such, manifestly, was not the intent of the parties.

Appellant grants that it is elementary that, in cases where the granting clause of a deed declares the purpose of a grant to be a right of way for a railroad, the deed passes an easement only, not a fee, though it be in the usual form of a full warranty deed. 1 Thompson on Real Property, § 421.

Appellant then quotes, as the granting clause of this deed, as follows:

" . . . do by these presents give, grant, bargain, sell and convey unto said Northern Pacific Company, or its assigns, the following described premises, viz: . . ."

Appellant then assumes that, the above being the granting clause, the remainder of the first part of the deed is merely a description of the property conveyed, that is, the right of way for the construction of the company's railroad in and over the land described.

But the appellant delimits the supposed granting clause too much. The granting clause must also include the property conveyed, so that it may be identified. The property conveyed in the above granting clause reads:

". . . the right-of-way for the construction of said company's railroad in and over the south half of the northeast quarter of section twenty-two and the west half of the northwest quarter of section twenty-three of township fifteen, north of range two west, situate in Thurston county, Washington territory . . ."

Cases are cited by counsel, as bearing upon this question, which have little or no bearing upon the matter. Respondent cites several of our cases which have no application whatever to the sort of case we have before us.

*Biles v. Tacoma, Olympia & G. H. R. Co.*, 5 Wash. 509, 32 Pac. 211, was a case where one railroad company had conveyed to another, reserving and excepting a strip of land of specified width to be used for a right of way for railroad purposes; and we held that the reservation was of a right of way creating nothing more than an easement, and a deed in fee to the premises would convey the entire property subject to such easement.

Respondents also cite *Golden v. Pilchuck,* 75 Wash. 66. No such case is to be found. There is a case entitled *Golden v. Pilchuck Tribe No. 42, I. O. R. M.,* 71 Wash. 581, 129 Pac. 93, and on rehearing in 76 Wash. 66, 135 Pac. 819, which has nothing in aid of their contention.

Another case, *Studebaker v. Beek,* 83 Wash. 260, 145 Pac. 225, was a case involving an instrument reserving and excepting a strip of land as having been conveyed theretofore to a railroad company for a right of way. It was found that the instrument was ambiguous and required the court, in determining the matter, to look into the surrounding circumstances, upon which examination it was held that only an easement was granted.

*Pacific Iron Works v. Bryant Lumber & Shingle Mill Co.,* 60 Wash. 502, 111 Pac. 578, cited and relied upon by respondents, involved a right of way deed wherein the grantors conveyed a strip of land one hundred feet in width for railway purposes, and contained a reverter clause that, if it should cease to be used for a railway, the premises should revert to the grantors, their heirs, administrators, executors or assigns. It is true that the *habendum* clause in that deed was to the effect that the grantee should have and hold the premises and appurtenances to it, its successors and assigns forever; and the court adverted thereto, saying that, although such words were in the deed, it did not have the effect of creating a grant in fee simple, because plainly the instrument, construed as a whole and in the light of the purpose for which it was made, was a grant of a right of way or easement and nothing else.

In the instrument before us, there is no reverter clause and no clause reserving the right of re-entry, if and when the right of way should be abandoned for railway purposes.

568

Appellant is no more successful in bringing to our attention apt cases upon just such an instrument as that in suit than respondents.

Had the instrument ended with the grant of the right of way across the legal subdivisions described and the adoption thereof by the grantee, as must be presumed, and the occupation of the granted premises, there could be no doubt that it was intended to convey simply the right of way and easement in the land itself. The doubt arises when we consider the second clause of the deed comprising the *habendum* and the covenants.

It will be observed that the granting clause creates a right of way without any specific width or length, except that the length is undoubtedly limited by the lines of the legal subdivisions in which it was situated. The deed might have been voidable at one time for indefiniteness and uncertainty, but for the principle of law that a deed will not be declared void for uncertainty when the light which contemporaneous facts and circumstances furnish, would render the description definite and certain.

Courts generally recognize that the words "right of way" have a twofold meaning. They are sometimes used to describe a mere right of passage over a tract, and sometimes to describe the strip of land which railroad companies purchase, or otherwise compulsorily acquire, upon which to construct their railroad. *Joy v. St. Louis,* 138 U. S. 1; *New Mexico v. United States Trust Co.,* 172 U. S. 171; *Maysville & B. S. R. Co. v. Ball,* 108 Ky. 241, 56 S. W. 188; *Abercrombie v. Simmons,* 71 Kan. 538, 81 Pac. 208, 6 Ann. Cas. 239.

Many of the courts say that the nature of the right of way purchased or condemned by a railroad company is more than a mere easement. It has been designated as a qualified or determinable fee, although it is not very important what it is called. It is taken for a

specific purpose to be held so long as devoted to that purpose. A railroad right of way is a very substantial thing. It is more than a mere right of passage. It is more than an easement. *Abercrombie v. Simmons, supra,* citing *Western Union Tel. Co. v. Pennsylvania R. Co.,* 195 U. S. 540.

In the *Abercrombie* case, above cited, it was held that, whatever its name, the interest taken was for the use of the right of way, was limited to that use and must revert when the use is abandoned. In that case, the instrument was one in the form of a general warranty describing a right of way of specific width which the grantee afterwards abandoned. The case also contains an exhaustive discussion of the cases generally bearing upon the question of such grants. It is followed by a case note in 6 Ann. Cas., p. 239, *supra,* among others, citing many cases to the effect that, where a railroad has taken a conveyance expressly granting a right of way, it will be held to have taken an easement merely, and that a grant of a strip of land to a railroad company ''for right of way and for operating its railroad only,'' conveyed merely an easement.

In a rather similar case, *Lockwood v. Ohio River R. Co.,* 103 Fed. 243, the granting clause in the instrument

'' ' . . . grants and conveys to the railway company the full and free right of way, of the width of 50 feet, with necessary grounds for cuts and fills for the road of said company in, upon and through the lands of Pugh,' upon the line surveyed by the engineer of the company, 'which right of way is hereby granted and conveyed for the construction, building, and use of the road of the said company.' ''

In passing upon the case, among other things, it was observed that:

''It would not be fair to assume that, under the guise of procuring simply a right of way, the railway company intended by the use of these words to take a

conveyance in fee simple. The words of the covenant, if separated from the rest of the agreement, are very broad, but they ought not to be taken in their broadest import if they are equally appropriate in the sense limited to the object the parties had in view and their apparent intentions as deduced from the whole instrument; . . . The granting clause of this instrument conveys only a right of way, which is a mere easement, the owner of the soil retaining his exclusive right in all mines, timber and earth for every purpose not incompatible with the use for which it is granted; . . ."

"However broad and comprehensive the covenants in a conveyance may be, they are to be construed as securing to the grantee only the estate actually limited to him by the conveyance. Their office being merely to assure and defend that which has been granted, they are only co-extensive with the grant, and can have no wider scope and effect than the conveyance to which they are annexed. 'In construing and applying covenants, they are intended not to enlarge, but to defend the grantee of the estate granted in the deed, so that, if the grant be of less than a fee, a covenant to warrant it to the grantee and his heirs does not enlarge the estate to a fee.' 3 Washb. Real Prop. 448."

" 'A fee simple may be had in incorporeal as well as corporeal hereditaments.' 1 Washb. Real Prop. 82. 'Where the granting clause of a deed declares the purpose of the grant to be a right of way for a railroad, the deed passes an easement only, and not a fee, though it be in the usual form of a full warranty deed.' Jones, Easem. p. 212. Covenants do not of themselves pass any estate, or enlarge or restrict the estate conveyed."

It was held in the above cited case that it was the intention of the grantor to convey only a right of way; that the railway company therefore took only an easement in the land, and not the land itself; that the covenant could not be construed to enlarge the grant; and that the railway company was not entitled, by

virtue thereof, to anything more than an incorporeal hereditament.

The above case was before the United States supreme court on petition for certiorari in 180 U. S. 637, where certiorari was denied.

A similar case upon a grant very much like the one referred to in the last cited case, was decided by the supreme court of West Virginia in *Uhl v. Ohio River R. Co.*, 51 W. Va. 106, 41 S. E. 340. The granting clauses and covenants were very nearly identical. The railroad company in that case contended that the instrument granted it an absolute fee simple estate in the *corpus*, or body of the soil, of a fifty-foot strip carrying with it all rights above and below. The opinion reviews and discusses many cases involving grants of rights of way and easements in a very instructive way. In the course of the opinion, it was said:

"The agreement in this case does not grant land in its granting clause, but only right of way . . . . Where the granting clause declares the purpose of the grant to be a right of way for a railroad, the deed passes an easement only, though it be in the usual form of warranty deed." (Citing texts and cases.)

It was there observed that the construction of a deed must be made upon the entire instrument, and the intention of the grantor, as derived from the deed itself, should be sought and, if discovered, should be carried into effect where it can be done consistently with rules of law. It was held in that case that the grant of the right of way was not for a fee simple absolute estate, but a limited or determinable fee simple, which did not convey the title to the property beneath the surface to the grantee.

In *Jones v. Van Bochove*, 103 Mich. 98, 61 N. E. 342, the court recited the granting clause as follows:

"All that certain piece or parcel of land situated . . . and described as follows, to wit: The right of

way for a railroad, running from the marl bed of said cement company to their works, on the west side of Kalamazoo river, and described as follows: 'A strip of land forty feet wide; . . . and being nine hundred fifty-two feet in length.' "

The court also said that the deed was in the usual form of a full covenant warranty. That right of way was later abandoned by the grantee for use for railway purposes, the rails and ties removed and the fences taken away.

Some of the cases and texts were reviewed in the last cited case, and it was held that the instrument in question, although the form of a full warranty deed, conveyed an easement only, and not a fee.

In *Cincinnati, H. & D. R. Co. v. Wachter,* 70 Ohio 113, 70 N. E. 974, the grant involved was of a right of way, one hundred feet in width, across a tract of land containing twenty acres or more, together with a waiver of all further damages that might arise by reason of the location or construction of the railroad or repairing thereof when finally established or completed. There was no reservation of any kind in the instrument. The right of way was adopted, the road completed in 1854, and used continuously for the operation of railroad passenger and freight trains. The court there said:

"The right of way of the company is an easement. Washb. on E. & S. 4. It is, using exact language, a servitude imposed as a burden on the land. The conveyance from Crane in terms specifies that it is a 'release of a right of way,' and no question is made, and we presume none can be, that the right thus granted is not different from, nor greater than, that which would result from an appropriation proceeding under the statute."

It was held in that case that an easement, and not a fee simple estate, was granted.

A case strongly relied upon by appellant is *Killgore v. Cabell County Court,* 80 W. Va. 283, 92 S. E. 562, L. R. A. 1918B, 692.

The granting clause in that case was recited by the court as follows:

"Witnesseth: That the said parties of the first part in consideration of the sum of $600 in hand paid and for the further consideration of the advantages and benefits which will inure to them by reason of the construction of said railroad, do grant to the said Chesapeake & Ohio Railroad Company, for the construction of a double track of railway, through certain section of land through the land owned by them situated in Cabell county, containing about 197 acres, bounded, etc. . . ."

It was contended in that case, on the one hand, that the grant was an easement only, and, on the other hand, that it was a fee simple. It was also contended that the case was governed by the decision of the same court in *Uhl v. Ohio River R. Co.,* cited by us, *supra.* The court distinguished the last cited case from the *Uhl* case, *supra,* saying that in the *Uhl* case:

". . . the deed of conveyance to the railway company granted by express terms a right of way for its railroad over the lands of the grantor. In this case the deed grants the land described therein, and recites the purpose for which it is to be used by the railway company. In the *Uhl* case the question for decision by the court was whether or not the grant of a right of way was the grant of an easement or was the grant of the land itself. It turned upon what meaning was to be given the words 'right of way' used in the granting clause of the deed, and the court came to the conclusion that taking into consideration the fact that the grantee was a railroad company, and that it needed this land only for the purpose of constructing its railroad thereon, and the further consideration that the deed itself only granted the right of way over the land, its effect

was only to vest in the railway company an easement, and not to grant the land itself."

It is to be noted that, in the last cited case before that court, quite a tract of land was conveyed in the instrument, to wit, about one hundred ninety-seven acres. It could be presumed that no such amount of land was necessary or intended for strictly railway right of way purposes. Since railways have, in the absence of restrictive statutes, the right to acquire real estate for any purpose whatever, as they apparently had in that state, we think that court properly decided that that conveyance granted a full fee simple title. We see little resemblance between that case and the case before us.

See case notes to *Norton v. Duluth Transfer R. Co.*, 129 Minn. 126, 151 N. W. 907, Ann. Cas. 1916E, 760, (pp. 763-5).

A noted text writer states the law as follows:

"A grant of a right of way to a railroad company is the grant of an easement merely, and the fee remains in the grantor. The mere fact that the railroad company's charter empowered it to acquire a greater estate than that which it contracted for has been held not to affect its rights in the land purchased. But statutes authorizing railroad companies to acquire the fee in land have been generally given effect. It is held that a deed conveying land to a railroad for a right of way gives the railroad no more rights than it would have acquired by condemnation. 'The easement is not that spoken of in the old law books, but is peculiar to the use of a railroad which is usually a permanent improvement, a perpetual highway of travel and commerce, and will rarely be abandoned by nonuser. The exclusive use of the surface is acquired, and damages are assessed, on the theory that the easement will be perpetual; so that, ordinarily, the fee is of little or no value unless the land is underlaid by quarry or mine.' Where the intention to convey a fee does not appear, as in case of the conveyance of a 'right of way' for

the railroad through certain lands, the company takes an easement only. The fact that the right conveyed is designated as a fee, or that the deed contains covenants of warranty, does not necessarily pass the fee." 1 Thompson on Real Property, § 420.

We believe it to be mutually conceded that there is not now, and was not during the territorial existence, any legislation prohibiting railroad companies from acquiring lands for any purposes in fee simple.

But if the railroad company in this instance acquired these lands in fee simple, it acquired, as suggested by appellant, the whole of the legal subdivisions described in the deed.

Since, manifestly, that was not the intention of any of the parties and the deed was for a right of way, we will construe the deed, as the parties evidently intended, as a grant of right of way only, title to which ceased when the railway company abandoned it as a right of way.

The title is therefore in respondents, as the trial court decided.

The decree is affirmed.

TOLMAN, BEALS, and MILLARD, JJ., concur.

FULLERTON, J., concurs in the result.