[No. 46042.   En Banc.   September 6, 1979.]

RICHARD VEACH, ET AL, *Petitioners,* v. FRANK CULP, ET AL, *Respondents.*

*Sam Peach,* for petitioners.

*Lycette, Diamond & Sylvester,* by *Lyle L. Iversen,* for respondents.

BRACHTENBACH, J.—Along the shore of Lake Whatcom there is a railroad. It is the source of this prolonged litigation. The defendant railroad currently operates an excursion train over 4 1/2 miles of track formerly owned by the Burlington Northern Railroad. In 1901, the railroad's predecessor in interest acquired a quitclaim deed from the fee owner; that deed is quoted later. The plaintiffs own 550 feet of Lake Whatcom lake front and 6 acres of upland property. The defendant railroad's tracks bisect plaintiffs' two parcels.

Plaintiffs and their lessees have used portions of the right–of–way for lake front–oriented purposes, such as picnic tables and a bathhouse. They have crossed the right–of–way to reach the lake and want to continue to do so. They draw water from the lake through a pipe running under the right–of–way. The railroad objects. After a series of skirmishes, the confrontations came to a head when the railroad removed portions of the plaintiffs' improvements

on the beach, within the right–of–way, and erected a chain link fence effectively preventing access to the lake. This lawsuit ensued.

Plaintiffs sought removal of the fence and damages from the loss of a sale of their property allegedly due to the railroad's assertion of exclusive rights to the right–of–way. Further they asked that the railroad be restrained from interfering with their littoral and riparian rights which had been reserved in the deed and that they be enjoined from restricting the unfettered use of plaintiffs' land. They also requested that the court declare the right–of–way had been abandoned.

Like most property disputes, the trial was lengthy. The trial court essentially held for the railroad, dismissing the plaintiffs' complaint and enjoining the plaintiffs from interfering with the railroad's operations except to cross the right–of–way to reach plaintiffs' land at a place and in a manner that would not interfere with defendants' operations or use of defendants' property or create any dangerous situation. The court held that the railroad owned the 100–foot strip in fee simple title. The Court of Appeals affirmed. *Veach v. Culp,* 21 Wn. App. 454, 585 P.2d 818 (1978). We reverse.

The controlling question is the nature of the interest conveyed by the 1901 deed. The pertinent portions of that quitclaim deed are:

> [T]he said party of the first part, for and in consideration of the sum of Two Hundred and Twenty–five Dollars, . . . do by these presents remise, release and forever quit claim unto said party of the second part, and to its assigns, all that certain lot, piece, or parcel of land situate in Whatcom County . . . to–wit:
> "A right–of–way one hundred feet wide, being fifty feet on each side of the center line of the B.B. & Eastern R.R. as now located through that portion of lot 6, Section 22, Township 37 North Range 4 East, lying east of Fir St. Blue Canyon and also Lot Seven (7) same Section excepting all rights for road purposes that may have

heretofore been conveyed to Whatcom County and particularly reserving all littoral and riparian rights to the said Fred and Mattie A. Zobrist [the grantors].

"Together with the tenements, hereditaments and appurtenances thereunto belonging or in anywise appurtaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof.

"To have and to hold, all and singular, said premises, together with the appurtenances unto the said party of the second part, and to its assigns forever.

▮ A conveyance of a right–of–way to a railroad may be in fee simple or may be an easement only. *Morsbach v. Thurston County,* 152 Wash. 562, 568, 278 P. 686 (1929). The interpretation of such a deed to determine its effect is a mixed question of fact and law. It is a factual question to determine the intent of the parties. Then we must apply the rules of law to determine the legal consequences of that intent. *Vavrek v. Parks,* 6 Wn. App. 684, 690, 495 P.2d 1051 (1972); *Warren v. Atchison, T. & S.F. Ry.,* 19 Cal. App. 3d 24, 35, 96 Cal. Rptr. 317 (1971).

In affirming the trial court, the Court of Appeals stated that substantial evidence supported the trial court's finding that the intent of the parties was that the deed conveyed a fee simple title and "[w]e therefore will not disturb that ruling on appeal." *Veach v. Culp, supra* at 458. In fact, there was no such finding—or any finding—as to the intent of the parties. There was a conclusion, denominated a finding of fact, that the sale was a sale of land, not a mere easement. That is not a finding of fact about intent. It is a legal conclusion as to the effect of the deed. No party to the deed testified. Therefore, we must look to the entire document to ascertain intent.

▮ The railroad argues, first, that the granting and habendum clauses evidence intent to convey a fee since they are absolute and, second, that the reference in the description to a right–of–way is therefore without any significance. That is too narrow. We must look at the entire document. As we held in *Morsbach v. Thurston County,*

*supra* at 566, the description is in fact a part of the granting clause. The language of the habendum clause is but one element in examining the whole of the deed.

■ The parties in fact describe what was being conveyed: a right–of–way 100 feet wide, being 50 feet on each side of the center line of the railroad. Language like this has been found to create an easement, not a fee simple estate. *Polk v. Ball,* 149 F.2d 263, 264 n.2 (5th Cir. 1945) ("A *right of way over and across . . .* the center line of said railway *as now located*"); *Daugherty v. Helena & N. Ry.,* 221 Ark. 101, 102–03, 252 S.W.2d 546 (1952) ("a strip of land . . . for a right of way . . . being fifty feet in width on each side of the center of the main track of said railroad as the same is now, or may hereafter be, located . . .").

In *Swan v. O'Leary,* 37 Wn.2d 533, 537, 225 P.2d 199 (1950), this court clarified the holding of *Morsbach* by stating:

> [I]t is clear that we adopted the rule that when the granting clause of a deed declares the purpose of the grant to be a right of way for a railroad the deed passes an easement only, and not a fee with a restricted use, even though the deed is in the usual form to convey a fee title.

The majority of other jurisdictions follow the rule declared in *Swan v. O'Leary.* Annot., 6 A.L.R.3d 973, 1013–24 (1966).

Given the language of the deed explicitly describing the conveyance of a right–of–way and given the rule of *Swan v. O'Leary, supra,* and *Morsbach v. Thurston County, supra,* we conclude the deed conveyed an easement, not a fee title.

■ The railroad contends, nonetheless, that it is immaterial whether it owns an easement or a fee simple title. Its premise for this contention is that a railroad right–of–way, whether in fee or an easement, is entitled to exclusive possession. It relies on dicta in *Morsbach v. Thurston County, supra* at 568, where the court commented that many courts

say that the right–of–way of a railroad company is more than a mere easement and that it is more than a mere right of passage. It further quotes dicta from a tax case, *New Mexico v. United States Trust Co.*, 172 U.S. 171, 43 L. Ed. 407, 19 S. Ct. 128 (1898). Certainly it is true that in most instances the very nature of a railroad will require it to enjoy a substantial right regardless of the nature of its title.

However, we must look to the actual use being made of this easement in light of the rule that the servient owner retains the use of an easement so long as that use does not materially interfere with the use by the holder of the easement. That principle is well established. *Seattle v. Nazarenus*, 60 Wn.2d 657, 666, 374 P.2d 1014 (1962); *Broadacres, Inc. v. Nelsen,* 21 Wn. App. 11, 15–16, 583 P.2d 651 (1978).

Here this railroad had been reduced to operation as an excursion operation. It has never made any freight deliveries. It has no paid employees. It has a very limited amount of equipment. Its single locomotive is owned by approximately 30 persons. It makes three round trips on Saturdays and two on Sundays. It is at the disputed site approximately only 15 minutes each trip. This regular usage is only on weekends during the summer for approximately 3 months. The other 9 months of the year it operates only on charter, admitting that in some months it has no charters at all.

Thus the average use by the railroad of this disputed track area would be approximately 1 hour and 15 minutes during the weekends and then only during the summer.

As holders of the subservient estate, the plaintiffs are entitled to use the right–of–way in such a manner as does not materially interfere with the railroad's use thereof. Plaintiffs concede that their use is so restricted.

Having determined that the railroad's right–of–way is one of easement, we need not reach the theory of implied easement advanced by the plaintiffs.

The decision of the Court of Appeals and the judgment of the trial court are reversed.

UTTER, C.J., ROSELLINI, WRIGHT, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., and ELSTON, J. Pro Tem., concur.

Reconsideration denied October 31, 1979.