4 P.3d 839 (2000)
ROEDER COMPANY, Appellant,
v.
K & E MOVING & STORAGE CO., INC., a Washington corporation, and the City of Bellingham, Respondents.
No. 44619-3-I.
Court of Appeals of Washington, Division 1.
May 30, 2000.
Reconsideration Denied and Publication Ordered July 13, 2000.
*840 Samuel Westly Peach, Bellingham, for Appellant.
Joseph Thomas Pemberton, Pemberton & Hoogstraat P.S., Bellingham, for Respondents.
AGID, C.J.
In 1901 Bellingham Bay Improvement Company (BBIC) deeded a 50-foot-wide strip of land to Bellingham Bay and British Columbia Railroad Company (BB & BC RR). The parties agree that the 1901 deed conveyed a railroad right of way, but they dispute whether the deed conveyed an easement or a fee simple interest in the right of way. Because the deed itself and the extrinsic evidence submitted at trial support the court's determination that the parties intended to convey a fee simple, we affirm.

FACTS AND PROCEDURAL HISTORY
In a 1901 bargain and sale deed captioned "Right of Way Deed," BBIC deeded a right of way to BB & BC RR. That deed, which is the subject of this appeal, reads:
The Grantor [BBIC], a corporation organized and existing under and by virtue of the laws of the state Washington [sic], in consideration of the sum of One (1) dollar in hand paid [sic]. Bargains, sells, and conveys unto [BB & BC RR] ... its successors and grantees, the following described real estate situated in the City of Whatcom, County of Whatcom, State of Washington to wit:
A tract of land fifty (50) feet wide.... The right of way hereby conveyed contains thirty-six one hundredths (.36) of an acre.
There are no living witnesses with personal knowledge of whether the original parties intended to convey a fee or an easement. At the bench trial, the trial court concluded that the deed was ambiguous on its face, and it therefore considered extrinsic evidence which consisted of letters, maps, and other documents from the late 19th and early 20th centuries related in various ways to the deed. The trial court also heard testimony from two witnesses, one for each party, who highlighted and gave their interpretations of the relevant portions of the documentary evidence. The trial court entered findings of fact and conclusions of law, and its ultimate determination was that the 1901 deed conveyed a fee simple interest. The court quieted title in favor of the City of Bellingham and K & E Moving & Storage Co., Inc. accordingly and later denied Roeder Company's motion for reconsideration. This appeal followed.

DISCUSSION
We review the trial court's findings of fact for substantial evidence in the record and conclusions of law to see if the findings support them.[1] At the heart of this appeal is whether the original parties to the deed intended to convey a fee simple interest or merely an easement. A railroad may hold a right of way in either form.[2] If the right of way is only an easement and its use for that *841 purpose ceases, the right to possession reverts to the original landowner or to that landowner's successors in interest, not to the grantees and successors in interest of the railroad company.[3]
Appellant Roeder Company is a family partnership and is BBIC's successor in interest to the land. Respondents K & E Moving, a Washington corporation, and the City of Bellingham are the railroad's successors in interest. If the original deed conveyed only an easement, the fee simple interest in the land would have reverted to BBIC when the railroad use was abandoned, and Roeder would now hold a fee simple interest in the land.[4] On the other hand, if the deed conveyed the right of way as a fee simple interest, BB & BC RR would have acquired a fee simple interest in the land, which would later have passed to the City and K & E Moving. Our reading of the deed itself in light of the principles discussed in Brown v. State,[5] together with the extrinsic evidence available in this case, confirms that the parties intended to convey a fee simple interest.[6]
When construing a deed, the intent of the parties "is of paramount importance and the court's duty to ascertain and enforce."[7] Whether the parties to a railroad right of way deed used a statutory form deed is a significant factor in determining what they intended. In Brown, the Supreme Court ruled that "where the original parties utilized the statutory warranty form deed and the granting clauses convey definite strips of land, we must find that the grantors intended to convey fee simple title unless additional language in the deeds clearly and expressly limits or qualifies the interest conveyed."[8] This rule also applies to bargain and sale deeds like the one involved here.[9]
In Brown, the Supreme Court analyzed a group of railroad deeds, most of which, unlike the deed involved here, expressly conveyed fee simple title to a definite strip of land. The court noted that a railroad deed's "use of the term `right of way' as a limitation or to specify the purpose of the grant generally creates only an easement."[10] Conversely, where the deed does not contain language about its purpose or limiting the conveyance, and it conveys a definite strip of land, "the deed will be construed to convey fee simple title."[11] In evaluating how to interpret the *842 references to "rights of way," the court noted that the phrase can have two purposes: "(1) to qualify or limit the interest granted in a deed to the right to pass over a tract of land (an easement), or (2) to describe the strip of land being conveyed to a railroad for the purpose of constructing a railway."[12] Because the words "right of way" appeared only in each deed's legal description or in the description of the railroad's obligations, instead of in the granting or habendum clauses, the court concluded that "[u]sed in this manner, `right of way' merely describes a strip of land acquired for rail lines; it does not qualify or limit the interest expressly conveyed in the granting and habendum clauses."[13]
Of particular importance for our case, the Brown court held that "the Simpson deed," which is similar in crucial respects to the deed involved here, conveyed a fee interest.[14] Like the deed here, the Simpson deed did not expressly grant a fee simple interest but did contain the words "right of way" in its legal description. The Simpson deed was also captioned "Right of Way Deed," exactly like the deed in this case. The Brown court did not consider either the absence of an express grant or the presence of the caption an impediment to holding that the deed conveyed a fee simple interest:
The Simpson deed is captioned "Right of Way Deed." The deed is in statutory form and coveys [sic] a definite strip of land, but does not expressly convey fee title. Because the purpose of the conveyance is not limited, we hold the deed conveyed fee simple title regardless of the caption.[[15]]
The same is true here.
In addition, a unique aspect of the deed involved here further undermines the argument that the words "right of way" in the legal description mean that only an easement was conveyed. The deed's caption applies to the entire document and implies that all sections of the deed seek to effect the same type of transaction. But although the deed conveyed two pieces of land, both of which are strips running along either side of a railroad "centerline," only one is referred to as "right of way." If the parties had intended to limit the presumptive fee simple interest by using the words "right of way" in the legal description, they would have used those words of limitation for both parcels since the caption demonstrates that the deed has a single purpose.
Finally, although the amount of consideration recited in the deed may be helpful in determining the parties' intent,[16] the nominal consideration here, $1, does not reveal much. The record establishes that railroads paid significant amounts for both easements and fee simple purchases.[17] Therefore, the negligible consideration alone does not negate the conclusion that, when read in light of Brown, the deed conveyed a fee simple *843 interest. Indeed, as we discuss below, the extrinsic evidence supports the trial court's finding that nominal consideration was appropriate here because the purpose of the deed was to reconvey land "mistakenly deeded" to BBIC by BB & BC RR.
Roeder's reliance on the analysis in Veach v. Culp[18] is misplaced because that case involved a quitclaim deed. Unlike deeds that follow the warranty or bargain and sale deed form, a quitclaim deed does not create a presumption that a fee simple estate was transferred absent express words to the contrary. Rather, a quitclaim deed merely conveys "all the then existing legal and equitable rights of the grantor."[19] Because the deed in this case follows the statutory bargain and sale deed form, the rules and analysis in Brown supply the correct analytical framework. And contrary to Roeder's contention at oral argument, nothing in Swan v. O'Leary,[20] which also involved a quitclaim deed, suggests that the statutory fee simple presumptions that we discussed above do not apply to a railroad right of way deed that follows the statutory form for a warranty or a bargain and sale deed.
Further, as the trial court recognized, the extrinsic evidence available in this case elucidates the reasons for what the deed itself reveals, that the parties intended to convey a fee simple interest, not an easement.[21] The trial court found that BB & BC RR "mistakenly" included the property at issue here when it deeded a number of large land tracts to BBIC in 1890. Because of that mistake, the court found the parties intended the 1901 deed to convey a fee simple interest in order to restore BB & BC RR's title to that strip of property, which it originally owned outright. Accordingly, the trial court reasoned, any reference to "right of way" in the deed or documents relating to it were necessarily references to "full title, not merely an easement for a particular use only," and only nominal consideration was required because the purpose of the deed was to correct a mistake. The extrinsic evidence supports these findings.
According to Daniel Bolster, Roeder's witness at trial, BB & BC RR owned all of the land surrounding and including the right of way in question in the late 1800s.[22] Later, Bolster explained, BB & BC RR developed BBIC as "a land company to sell [its] land." Bolster stated that BB & BC RR transferred most of its property to BBIC in 1891 with the "intention, I believe, [that] the railroad was going to be a railroad and BBI Company was going to be the land company owning property to sell the properties, create plats, do all the things to develop an area." Indeed, the record contains an 1890 deed in which BB & BC RR conveyed "certain parcels of land situate in the Town of New Whatcom, Whatcom County" to BBIC for one million dollars.[23] One of these parcels, generally referred to during trial as the "east half of the eastern most block," encompassed the railroad right of way at issue here."[24] About ten years later, in 1901, the parties executed the deed at issue here conveying from BBIC back to BB & BC RR a "right of way" along a railroad centerline that existed on that parcel.
Further, in a November 26, 1901 letter to BBIC's president, P.B. Cornwall, BBIC's Land Agent, G.C. Hyatt, wrote:

*844 Herewith enclosed please find Right of Way Deed of the statutory form as prepared by Attorney Howard, conveying from [BBIC to BB & BC RR] a right of way through the east tract of the Railroad reserve, as also through the northwest quarter of Section 20, township 38, north of range 3 east, with a view of facilitating the matter of perfecting the Railway Company's title.
... You will note that I have omitted the consideration.[[25]]
This letter and the testimony described above support the trial court's findings. It is reasonable to infer from this evidence that the parties intended to reconvey to BB & BC RR what it originally owned, and therefore a fee simple interest was intended. Although Bolster opined that BBIC conveyed back to BB & BC RR only a "right of passage," there is no evidence that clearly supports his hypothesis, and nothing in the record contradicts the court's findings.
In sum, the deed on its face, read in light of the analysis in Brown and together with the extrinsic evidence in this case, supports the trial court's findings about the parties' intent. Those findings, in turn, support the trial court's legal conclusions, which ultimately quieted title to the property in the City and K & E Moving.
Finally, substantial evidence supports the court's remaining findings to which Roeder assigns error. The mention of "Attorney Howard" in the letter quoted above is sufficient to support the court's finding 1.9, that the deed "was drafted by the Grantor, BBI, under the direction and authorship of their attorney, C.W. Howard." In addition, the language in the deed itself and the overall record support the remaining contested findings of fact.[26]
Affirmed.[27]
COLEMAN and WEBSTER, JJ., concur.
NOTES
[1] Landmark Dev., Inc. v. City of Roy, 138 Wash.2d 561, 573, 980 P.2d 1234 (1999). While it may be appropriate to apply a less deferential standard in cases that involve only documentary evidence, the usual standard of review is appropriate here because the trial court heard extensive testimony from two witnesses, Daniel Bolster and Tim Wall, who offered their opinion to the court on the relevance and significance of some of those documents to the case. The trial court also made a finding about the parties' intent. In contrast, the Supreme Court evidently applied a de novo standard of review to a railroad right of way case in Veach v. Culp, 92 Wash.2d 570, 573, 599 P.2d 526 (1979), but there had been no finding of intent by the trial court.
[2] Roeder Co. v. Burlington Northern, Inc., 105 Wash.2d 567, 571, 716 P.2d 855 (1986).
[3] Id.
[4] It is undisputed that this right of way has been abandoned for railroad purposes.
[5] 130 Wash.2d 430, 924 P.2d 908 (1996).
[6] The trial court thought it was required to conclude that the deed was ambiguous before it could consider extrinsic evidence. Although that rule once applied in railroad right of way cases, see, e.g., Roeder Co. v. Burlington Northern, Inc., 105 Wash.2d 269, 276, 714 P.2d 1170 (1986), the Supreme Court has recently ruled that, in light of Washington's adoption of the "context rule" for contracts, courts may look to extrinsic evidence along with the deed itself to determine the parties' intent. See Brown, 130 Wash.2d at 438, 924 P.2d 908 ("In addition to the language of the deed, we will also look at the circumstances surrounding the deed's execution and the subsequent conduct of the parties."); Harris v. Ski Park Farms, Inc., 120 Wash.2d 727, 742-43, 844 P.2d 1006 (1993) (applying the context rule to ascertain the parties' intent in conveying a railroad "right of way" and rejecting the notion that ambiguity must precede consideration of extrinsic evidence in those cases), cert. denied, 510 U.S. 1047, 114 S.Ct. 697, 126 L.Ed.2d 664 (1994). We therefore consider both the deed and the extrinsic evidence.
[7] Brown, 130 Wash.2d at 437, 924 P.2d 908.
[8] Id. The statutory basis for assuming a fee simple interest unless there is language to the contrary is clear. RCW 64.04.030 states that every deed that follows the statutory warranty deed form "shall be deemed and held a conveyance in fee simple to the grantee, his heirs and assigns...." This rule originated in 1886. See Laws of 1886, § 3 at 177.
[9] See Brown, 130 Wash.2d at 444, 924 P.2d 908. Like a deed that follows the statutory warranty deed form, a bargain and sale deed based on the statutory form automatically conveys a fee simple estate. RCW 64.04.040 provides that a deed modeled on the bargain and sale form "shall convey to the grantee, his heirs or assigns an estate of inheritance in fee simple...." This presumption also originated in 1886. See Laws of 1886, § 4 at 178.
[10] Brown, 130 Wash.2d at 439, 924 P.2d 908.
[11] Id. at 440, 924 P.2d 908. The general purpose of the conveyance, i.e. for railroad purposes, is not helpful in this inquiry because it does not clarify whether the right of way is an easement or a fee. Courts must "conduct a deed-by-deed analysis to ascertain whether the parties clearly and expressly limited or qualified the interest granted, considering the express language, the form of the instrument, and the surrounding circumstances." Id.
[12] Id. at 441, 924 P.2d 908.
[13] Id. at 442, 924 P.2d 908.
[14] A copy of the Simpson deed was an exhibit at trial.
[15] Brown, 130 Wash.2d at 444, 924 P.2d 908.
[16] The Brown court enumerated a number of factors helpful in "determining whether the property owners have met their burden of showing that the original parties intended to adapt the statutory form to grant easements instead of fees simple." They are:

(1) whether the deed conveyed a strip of land, and did not contain additional language relating to the use or purpose to which the land was to be put, or in other ways limiting the estate conveyed; (2) whether the deed conveyed a strip of land and limited its use to a specific purpose; (3) whether the deed conveyed a right of way over a tract of land, rather than a strip thereof; (4) whether the deed granted only the privilege of constructing, operating, or maintaining a railroad over the land; (5) whether the deed contained a clause providing that if the railroad ceased to operate, the land conveyed would revert to the grantor; (6) whether the consideration expressed was substantial or nominal; and (7) whether the conveyance did or did not contain a habendum clause, and many other considerations suggested by the language of the particular deed.
Id. at 438, 924 P.2d 908 (emphasis added).
[17] Exhibit 3 indicates that BBIC sold an "Easement of R of W" to a railroad for $1,200.00 in 1902.
[18] 92 Wash.2d at 570, 599 P.2d 526
[19] See RCW 64.04.050.
[20] 37 Wash.2d 533, 225 P.2d 199 (1950).
[21] There was no extrinsic evidence of the parties' intent available to the Brown court. See 130 Wash.2d at 437 n. 5, 924 P.2d 908.
[22] Bolster is a member of the family that owns the Roeder Company. His testimony implies that he had conducted his own research at the Archivic Center for Northwest Studies and was familiar with many of the historical documents in the archives that relate to Roeder.
[23] The 1890 date on the deed conflicts with Bolster's reference to an 1891 transfer of land between BB & BC RR and BBIC, but it is reasonable to assume that Bolster was referring to the 1890 transfer.
[24] The trial court had before it the 1890 deed. The record shows, and Bolster's testimony explains, that the 1890 deed incorrectly described the boundaries of the land on which the right of way exists, and the parties filed a correction deed in March 1901 clarifying the area conveyed.
[25] (Emphasis added.)
[26] The remaining contested findings are:

1.4 The November 26, 1901 deed has no reversionary language that would be triggered upon a different use of the subject property.
1.5 The November 26, 1901 deed used the word "tract" but the deed in fact describes a 50 foot wide strip of land.
1.6 The November 26, 1901 deed has no language restricting the use of the strip of land therein conveyed, but the deed does have a title that is a "right of way" deed.
Even if there were not substantial evidence to support these findings, the result would not change because they merely record the trial court's observations about the deed itself.
[27] The panel wishes to note that this case marks the end of a venerable legal career for appellant's attorney, Sam Peach, who argued one of the first cases before this court when it originated in 1969.